**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 09-_____ |
| v. | : | DATE FILED: December 8, 2009 |
| EDWARD G. MCCUSKER | : | VIOLATIONS: |
| JEFFREY A. BENNETT | | 18 U.S.C. § 1349 (conspiracy – 1 count) |
| STEPHEN G. DOHERTY | : | 18 U.S.C. § 1341 (mail fraud – 4 counts) |
| JOHN ALFORD BARIANA | | 18 U.S.C. § 1343 (wire fraud - 6 counts) |
| JACQUELINE MCCUSKER | : | 18 U.S.C. § 157 (fraudulent bankruptcy filing – 1 count) |
| | : | 18 U.S.C. § 1519 (false bankruptcy record – 2 counts) |
| | : | 18 U.S.C. § 1956(h) (conspiracy to launder money - 1 count) |
| | : | Notice of forfeiture |
| | : | |

**INDICTMENT**

**COUNT ONE**

**THE GRAND JURY CHARGES THAT**:

                                                       **Introduction**

At all times material to the indictment:

1.      Defendants JEFFREY A. BENNETT and STEPHEN G. DOHERTY were attorneys licensed to practice in Pennsylvania. Defendant BENNETT conducted real estate transactions while defendant DOHERTY practiced bankruptcy law. They owned Bennett & Doherty, P.C., Foreclosure Relief Services, LLC, and Fountainville Associates, LLC., and also did business as First County Abstract, LLC.

2.      As a settlement agent and agent for a title insurance company, defendant JEFFREY A. BENNETT received funds from lenders and deposited them into an escrow

account.  He was obligated to disburse funds from real estate transactions only as detailed on the

settlement statement, also known as a Form HUD-1, after the buyer of the real estate provided

the required funds and the lender authorized distribution of the loan funds.

   3.  Defendants EDWARD G. MCCUSKER and JOHN ALFORD BARIANA

owned Axxium Mortgage, Inc. ("Axxium"), a mortgage broker.  Defendants BARIANA and

JACQUELINE MCCUSKER, defendant EDWARD G. MCCUSKER's wife, owned J&J Realty

Acquisition, LLC ("J&J").

**The Conspiracy**

   4.  From in or about the Fall of 2004, through in or about June 2007, in the

Eastern District of Pennsylvania, and elsewhere, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER**

conspired and agreed, together with others known and unknown to the grand jury, to knowingly

devise a scheme to defraud, and to obtain money and property by means of false and fraudulent

pretenses, representations, and promises and, for the purpose of executing and attempting to

execute the scheme to defraud, used the United States mails, commercial interstate carriers, and

interstate wire communications, in violation of Title 18, United States Code, Sections 1341 and

1343.

**Manner and Means**

   It was part of the conspiracy that:

   5.  The defendants obtained mortgage loans on residences of financially

2

distressed homeowners, using homeowners' equity to pay the costs of the transaction. Defendant STEPHEN G. DOHERTY mailed advertisements for "Foreclosure Relief Services," to homeowners who were in foreclosure or whose residences had been listed for sheriff's sale.

6.     Defendant STEPHEN G. DOHERTY referred homeowners responding to these advertisements to defendant EDWARD G. MCCUSKER. From time to time, defendant DOHERTY filed fraudulent bankruptcy petitions on behalf of these homeowners.

7.     Defendant EDWARD G. MCCUSKER falsely promised homeowners he could save their homes by arranging for another person ("the straw purchaser" or "investor") to take out a mortgage for them and arranging an affordable payment for them for one year to let them get back on their feet financially. In fact, defendant EDWARD G. MCCUSKER arranged for the homeowner's residence to be transferred to the straw purchaser, used false documents to obtain a mortgage in the name of the straw purchaser, and took the proceeds of the sale for himself and his co-defendants. Defendant EDWARD G. MCCUSKER obtained mortgages with large prepayment penalties in the first year because he received larger commissions.

8.     To lenders, the defendants submitted: (a) purchase and sales agreements with forged signatures; (b) forged lease agreements; (c) documents which misstated the borrower's creditworthiness; (d) documents which falsely showed that the borrower was making a "down payment" when the down payment was either not paid by the borrower or was repaid to the borrower shortly after closing; and (e) documents which concealed that the straw purchaser depended on the financially distressed homeowner to pay part of the mortgage. Defendants JACQUELINE MCCUSKER and JOHN ALFORD BARIANA obtained mortgages for ten homes as part of the scheme. Also, the defendants recruited at least seven others to act as straw

purchasers.  In all, at least 35 homeowners fell victim to this scheme.

9.    After the defendants obtained a mortgage for a property, they scheduled a closing at defendants JEFFREY A. BENNETT and STEPHEN G. DOHERTY's title company. In cases in which defendant DOHERTY had filed a bankruptcy petition, he dismissed the bankruptcy proceedings so that the closing could proceed.

10.    Defendant JEFFREY A. BENNETT prepared closing documents transferring the title to the distressed homeowner's house to defendants JOHN ALFORD BARIANA or JACQUELINE MCCUSKER, or another straw purchaser.  Defendant EDWARD G. MCCUSKER participated in real estate closings, telling individuals which documents to sign.

11.    To conceal the distribution of the proceeds of the scheme, defendant JEFFREY A. BENNETT listed fictitious mortgages on the Form HUD-1.

12.    To convince the lender to release the proceeds of mortgage loans, defendant JEFFREY A. BENNETT prepared a fraudulent Form HUD-1 shortly before the closing, showing that the seller was to be paid the equity from the sale, which is the difference between the sale price and mortgage balance minus the seller's settlement costs.  However, the final Form HUD-1 showed that J&J or another entity controlled by the straw purchasers was paid the equity.

13.    Defendant EDWARD G. MCCUSKER recruited JS and SK as straw purchasers, promising them a significant fee.  Defendant EDWARD G. MCCUSKER instructed SK and JS to form a corporation and take out a line of credit.  Defendant EDWARD G. MCCUSKER obtained a mortgage in SK's name using false income information, prepared an agreement of sale with a forged signature for SK, and arranged for the purchase of a residence in

4

SK's name.  SK brought a cashier's check to the closing funded by the line of credit to use as a "down payment."  To conceal that SK and JS received the equity in the residence, defendant JEFFREY A. BENNETT caused it to be paid to the corporation SK formed.

14.    Defendant EDWARD G. MCCUSKER directed SK and JS to pay half of the money they received to J&J and two percent of the loan amount to Fountainville Associates.

15.    From time to time, defendant EDWARD G. MCCUSKER, JACQUELINE MCCUSKER and JOHN ALFORD BARIANA secretly lent money to straw purchasers for the "down payment," when the straw purchaser could not supply sufficient funds to complete the transaction.  These loans would be repaid at closing.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, the defendants committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

### The Chalfont Transaction

1.    In or about July 2005, defendant STEPHEN G. DOHERTY referred CJM and RM, who were homeowners in financial distress, to Axxium.

2.    In or about July 2005, defendant JOHN ALFORD BARIANA prepared an agreement of sale for CJM and RM's home in Chalfont, Pennsylvania, containing forged signatures of CJM and RM, and caused it to be sent by fax to Long Beach Mortgage Company ("Long Beach") in California.

3.    On or about July 29, 2005, in connection with the financing of this transaction, defendant JEFFREY A. BENNETT prepared a fraudulent Form HUD-1 reflecting

"cash to seller" of $85,058.97, which was faxed to Long Beach. Approximately two hours later, defendant BENNETT prepared a revised Form HUD-1 for this transaction. This time, the "cash to seller" line was zero, and a payoff to J&J was listed as $85,058.97. At the closing, defendant BENNETT paid $85,058.97 to J&J.

The Perkasie Transaction

5.      In or about January 2006, defendant STEPHEN G. DOHERTY referred DP, a bankruptcy client who lived in Perkasie, Pennsylvania, to defendant EDWARD G. MCCUSKER for help saving DP's home from foreclosure.

6.      On or about January 5, 2006, in connection with the transaction, defendant EDWARD G. MCCUSKER caused an agreement of sale with forged signatures to be sent by fax to Long Beach.

7.      On or about January 10, 2006, defendant EDWARD G. MCCUSKER caused a false rental agreement to submitted to Long Beach, claiming CMK, defendant EDWARD G. MCCUSKER's sister, was going to be a tenant in the Perkasie home when, in fact, DP would continue to live there.

8.      On or about January 12, 2006, defendant JEFFREY A. BENNETT caused a fraudulent Form HUD-1 to be faxed to Long Beach, showing "cash to seller" of $95,726.10. A short time later, defendant BENNETT prepared a second Form HUD-1 used at the closing showing zero cash to seller and $92,330.59 was paid to J&J.

The Quakertown Transaction

9.      In or about December 2005, defendant EDWARD G. MCCUSKER told SE, a homeowner in Quakertown, Pennsylvania, facing foreclosure, that she would be able to sell

6

her house to an "investor" and pay rent of $1,200 per month to remain in the house. Defendant MCCUSKER falsely stated that the investor would take half the equity in her home and SE would use the other half as a down payment when she purchased the house back within a year.

10.    Defendant EDWARD G. MCCUSKER arranged for a mortgage for the straw purchaser and submitted to the lender an agreement of sale containing forged signatures.

11.    At the closing, instead of placing the equity for a future down payment for the repurchase of the house as promised, defendant EDWARD G. MCCUSKER caused the equity in SE's property of approximately $144,481.76 to be paid to New Horizons Realty Acquisition, an entity owned by the straw purchasers, and no money was paid to SE. Immediately after closing, a share of the profit was paid to defendants JEFFREY A. BENNETT and STEPHEN G. DOHERTY, through their corporation Fountainville Associates, and to JACQUELINE MCCUSKER and JOHN ALFORD BARIANA, through their corporation J&J.

The Lumberville Transaction

12.    In or about 2006, defendant STEPHEN G. DOHERTY referred MM to defendant EDWARD G. MCCUSKER after learning that MM was having difficulty paying his mortgage. Defendant MCCUSKER promised he could help MM pay off his debts, falsely suggesting that he would help refinance MM's mortgage.

13.    In or about March 2006, defendant EDWARD G. MCCUSKER arranged for a loan for MM using false documents, including a forged purchase and sale agreement, showing that MM had sold his residence for $1.3 million to JAB, a straw purchaser whom defendants EDWARD G. MCCUSKER and JOHN ALFORD BARIANA recruited.

14.    On or about March 25, 2006, defendant EDWARD G. MCCUSKER

7

caused an application seeking an $800,000 loan for JAB to be faxed to Long Beach.  The

application falsely stated that JAB had more than $500,000 in a Commerce Bank account and

that JAB was employed at Axxium.  Defendant EDWARD G. MCCUSKER also submitted a

false verification of employment form for JAB and falsely told a Long Beach employee that JAB

had worked for Axxium as a senior loan consultant for three years.

      15.    On or about March 29, 2005, which was the morning that the transaction

was scheduled to close, defendant JEFFREY A. BENNETT instructed JAB to pick up a cashier's

check for $533,430.76 that had been purchased with a transfer from defendant BENNETT's law

firm's escrow account to a new account in the name of Juleann, LLC, a corporation JAB

established to conduct the transaction.  The Juleann LLC account had been opened without

JAB's knowledge or permission.

      16.    On or about March 29, 2005, JAB provided the $533,430.76 check to

defendant JEFFREY A. BENNETT.

      17.    On March 29, 2006, defendant JEFFREY A. BENNETT faxed a Form

HUD-1 falsely showing that MM would be receive $588,490.81 from the transaction.  At

closing, defendant BENNETT prepared a second HUD-1 form showing a $533,430.76 payment

to Juleann, LLC, and only $55,000 to MM.

      All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 3 and 5 through 15 and Overt Acts 1 through 17 of

Count One of this indictment are incorporated here.

2.    Between in and about Fall of 2004 and June 2007, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER,**

knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money

and property by means of  false and fraudulent pretenses, representations, and promises.

3.    On or about the dates set forth below, in the Eastern District of

Pennsylvania, and elsewhere, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER,**

for the purpose of executing the scheme described above, and attempting to do so, and aiding and

abetting its execution, knowingly caused to be delivered by Federal Express, a commercial

interstate carrier, according to the directions thereon, the items described below:

9

| Count | Date | Description |
|-------|------|-------------|
| 2 | 7/29/05 | Package from Bennett & Doherty to Long Beach containing closing documents for the sale of CJM and RM's residence. |
| 3 | 1/17/06 | Package from Bennett & Doherty to Long Beach containing closing documents for the sale of DP's residence. |
| 4 | 2/1/06 | Package from Bennett & Doherty to Long Beach containing closing documents for the sale of SE's residence |
| 5 | 3/30/06 | Package from Bennett & Doherty to Long Beach containing closing documents for the sale of MM's residence |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS SIX THROUGH ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.      Paragraphs 1 through 3 and 5 through 15 and Overt Acts 1 through 17 of

Count One of this indictment are incorporated here.

       2.      Between in or about the Fall of 2004 and June 2007, in the Eastern District

of Philadelphia and elsewhere, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER,**

knowingly devised a scheme and artifice to defraud and to obtain money and property by means

of  false and fraudulent pretenses, representations, and promises.

       3.      On or about the dates set forth below, in the Eastern District of

Pennsylvania and elsewhere, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER,**

for the purpose of executing the scheme described above, and attempting to do so, and aiding and

abetting its execution, caused to be transmitted by means of wire communication in interstate

commerce the signals and sounds described below, each transmission constituting a separate

count, on or about the following dates:

11

| Count | Date | Description |
|-------|------|-------------|
| 6 | 7/21/05 | Fax from Axxium to Long Beach of a purchase and sale agreement for the Chalfont property containing forged signatures. |
| 7 | 7/29/05 | Fax from defendant BENNETT to Long Beach of a false Form HUD-1 for the Chalfont property. |
| 8 | 7/29/05 | Wire transfer from an account of Long Beach funding the loan for the Chalfont property. |
| 9 | 1/5/06 | Fax from Axxium to Long Beach of a purchase and sale agreement for Perkasie property containing forged signatures. |
| 10 | 1/12/06 | Fax from defendant BENNETT to Long Beach of a false Form HUD-1 for the Perkasie property. |
| 11 | 1/13/06 | Wire transfer from an account of Long Beach funding the loan for the Perkasie property. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 9, 2004, in the Eastern District of Pennsylvania, defendant

**STEPHEN G. DOHERTY,**

for the purpose of executing and concealing the scheme to defraud charged in Counts One

through Eleven of this indictment, and attempting to do so, filed a petition for bankruptcy under

Title 11, United States Code, in the United States Bankruptcy Court for the Eastern District of

Pennsylvania on behalf of PLU, a person known to the grand jury.

In violation of Title 18, United States Code, Section 157(1).

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 1, 2005, in Philadelphia, in the Eastern District of

Pennsylvania, defendant

### STEPHEN G. DOHERTY

knowingly made a false entry in a record and document with the intent to impede, obstruct, and

influence the investigation and proper administration of a case filed under Title 11 of the United

States Code, and in relation to and contemplation of such matter or case, that is, falsely stated in

a bankruptcy petition for ASC and CMC, which was filed in the United States Bankruptcy Court

for the Eastern District of Pennsylvania, that ASC and CMC had paid off three mortgages on

their home, when defendant DOHERTY knew that one of the payoffs was not a mortgage but a

payment to Axxium.

In violation of Title 18, United States Code, Section 1519.

## COUNT FOURTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 6, 2005, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### STEPHEN G. DOHERTY

knowingly made a false entry in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of a case filed under Title 11 of the United States Code, and in relation to and contemplation of such matter or case, that is, falsely stated in a bankruptcy petition for CJM and RM, which was filed in the United States Bankruptcy Court for the Eastern District of Pennsylvania, that CJM and RM had paid off three mortgages on their home, when defendant DOHERTY knew that one of the payoffs was not a mortgage but a payment to J&J.

In violation of Title 18, United States Code, Section 1519.

## COUNT FIFTEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 3 and 5 through 15 and Overt Acts 1 through 17 of Count One of this indictment are incorporated here.

2.      In or about July 2005 through in and about May 2006, in the Eastern District of Pennsylvania, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER**

conspired and agreed together and with others known and unknown to the grand jury, to knowingly conduct and attempt to conduct one or more financial transactions, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, that is, mail and wire fraud, knowing that the financial transactions were designed in whole and in part to promote the fraudulent scheme and conceal and disguise the nature, location, source, ownership and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and (a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

**NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       As a result of the violations of Title 18, United States Code, Sections

1341, 1343, 1349, and 1956(h), set forth in this indictment, defendants

**EDWARD G. MCCUSKER,**
**JEFFREY A. BENNETT,**
**STEPHEN G. DOHERTY,**
**JOHN ALFORD BARIANA, and**
**JACQUELINE MCCUSKER,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds

obtained directly or indirectly from the commission of such offenses, including, but not limited

to the sum of $14,649,000.

2.       If any of the property described above, as a result of any act or omission of

the defendant:

a.       cannot be located upon the exercise of due diligence;

b.       has been transferred to, sold to, or deposited with a third party;

c.       has been placed beyond the jurisdiction of this Court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided
without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any

other property of the defendant up to the value of the property subject to forfeiture.

17

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), 28 U.S.C.

§ 2461, and United States Code, Section 853.

**A TRUE BILL:**

_____

**GRAND JURY FOREPERSON**

_____

**MICHAEL L. LEVY**
**United States Attorney**

18